## Application of RED TOP SEDAN SERVICE, Inc.

Railroad & Public Utilities Commission.

April 2, 1956.

John T. Bond, Miami, for the applicant.

Wayne K. Ramsay, Jr., Jacksonville, for Florida Greyhound Lines, protestant.

William P. Simmons, Jr., Miami, for Mercury Radio Service, Inc., protestant.

Milton Robbins, Assistant City Attorney, for city of Miami Beach as its interest might appear.

Arthur S. Weider, Miami Beach, for Wyllys Sportsman, Inc. and Davis Tours as their interest might appear.

Sig Thomsen, Miami, for Tropical Motor Tours as its interest might appear.

David J. Reynolds, Supervisor of Public Transportation, City of Miami, for the city as its interest might appear.

Philip Giverson, Miami Springs, for Dade County Taxicab Association as its interest might appear.

Chairman WILBUR C. KING, commissioners JERRY W. CARTER and ALAN S. BOYD participated in the hearing and disposition of this matter.

BY THE COMMISSION.

By the application in this proceeding Red Top Sedan Service, Inc. seeks extension of its common carrier certificate of public convenience and necessity #342 to authorize the transportation of passengers in 8-passenger chauffeur driven limousines from Miami Beach to all points and places in the state and return over irregular routes. Applicant proposes to charge $6 per hour for such chauffeur driven limousines beginning with the time they leave applicant's garage until such time as they return. Under the arrangement the limousine would be at the complete disposal, and the driver would be under the direction of, the party or parties arranging for same from the time it leaves the garage until its return.

It is apparent that the proposed transportation service is charter carriage or service as that term is defined by subsection (10) of section 323.01, Florida Statutes 1955 —

> "Charter" carriage or service means the transportation of a group of persons who, pursuant to a common purpose and under a single contract, have acquired the exclusive use of a motor bus of a greater capacity than seven, including the driver, in which to travel together as a group to a specified destination or for a particular itinerary either agreed upon in advance or modified or rearranged after having left the point of origin. "Charter" carriage shall not be deemed to include sight-seeing over public roads and highways for which individual tickets are sold, such carriage being deemed to be common carriage, and charter carriage shall not be deemed to include property or cargo carriage of any nature. "Charter" carriage as defined herein, in the interest of safety on the highways and safety of the traveling public, shall be performed only by common carriers of passengers whose motor vehicles meet the specifications of this chapter and are operated under the supervision and the rules and regulations of the commission.

Subsection (2) of section 323.14, in addition, provides as follows—

> Every certificate authorizing intercity common carriage of passengers, excepting, however, certificates authorizing sight-seeing service in common carriage, shall be deemed to carry with it as a part of the operating authority granted, the exclusive authority and privilege to engage in common carriage and between points of origin on such authorized routes and other points not thereon where another or other common carrier of passengers are not authorized to serve in common carriage both the point of origin and the point of destination.

It is obvious from the above statutes that charter carriage is an incident of intercity common carriage, which is an *exclusive* authority and privilege granted by statute to such intercity common carriers. The commission is without authority to grant specific charter rights but a carrier only has such charter authority as is

70

provided by the foregoing statutes. In consideration of the premises, the commission finds that it does not have statutory authority to grant this application. The application is therefore denied.